OPINION
On March 20, 1998, after a jury trial in the Trumbull County Court of Common Pleas, appellant, Sean Carter, was found guilty of aggravated murder with two of the capital specifications, aggravated robbery and rape, aggravated robbery, rape, and criminal trespass.[1] After a penalty hearing, the jury recommended that the death sentence be imposed. On April 2, 1998, the trial court adopted the jury's recommendation and sentenced him to death.
Appellant immediately filed a direct appeal of his conviction and sentence to the Supreme Court of Ohio, where both were affirmed. Statev. Carter (2000), 89 Ohio St.3d 593, 734 N.E.2d 345. On April 13, 1999, appellant filed a "petition to vacate or set aside conviction," which the trial court treated as a petition for postconviction relief. In his motion, appellant alleged prosecutorial misconduct, ineffective assistance of counsel, and incompetence to stand trial. On April 22, 1999, appellee filed a motion to dismiss appellant's petition, which the trial court sustained without a hearing on August 30, 1999. Both the trial court's dismissal of the petition for postconviction relief and the parties' filing of their appellate briefs were completed before the decision was released by the Supreme Court of Ohio.
Appellant raises the following assignments of error:
 "[1.] The trial court erred in denying appellant an evidentiary hearing on his petition for post-conviction relief, thus depriving appellant of liberties secured by U.S. Const. amend. VI and XIV, and Ohio Const. art. I [sections] 1, 2, 10, and 16, including meaningful access to the courts of this state [sic].
 "[2.] The trial court erred in applying the principles of res judicata, thus depriving appellant of liberties secured by U.S. Const. amend. VI and XIV, and Ohio Const. art. I [sections] 1, 2, 10, and 16."
We must first address whether we have the jurisdiction to consider the appeal of the denial of a petition for postconviction relief in a capital case in which a sentence of death was imposed for an offense committed after January 1, 1995. We believe that we do. The recent amendment of Section 2(B)(2)(c), Article IV, Ohio Constitution, effective January 1, 1995, states that the Supreme Court of Ohio has appellate jurisdiction: "[i]n direct appeals from the courts of common pleas or other courts of record inferior to the court of appeals as a matter of right in cases in which the death penalty has been imposed." (Emphasis added.) In response to that enactment, the Ohio legislature amended R.C. 2953.02 to read, in pertinent part: "[i]n a capital case in which a sentence of death is imposed for an offense committed on or after January 1, 1995, the judgment or final order may be appealed from the trial courtdirectly to the supreme court as a matter of right." (Emphasis added.) The constitutionality of this scheme was upheld by the Supreme Court of Ohio in State v. Smith (1997), 80 Ohio St.3d 89, 684 N.E.2d 668,certiorari denied (1998), 523 U.S. 1125. In Smith, the court briefly addressed postconviction relief as follows: "[i]ndeed, as defendant points out, the state has taken other steps to expedite the resolution of criminal cases, including capital cases, such as limiting the time within which to file postconviction petitions." Smith, 80 Ohio St.3d at 100.
It appears, from the statutory scheme, that postconviction proceedings still require intermediate appeals. The legislature amended the postconviction relief statute, R.C. 2953.21, to provide for filing a postconviction petition within 180 days after filing of the transcript with the Supreme Court, rather than the court of appeals.
Nowhere does it state that postconviction relief proceedings involving capital cases can only be appealed to the Supreme Court of Ohio.
Smith does not indicate that postconviction petitions are controlled by Section 2(B)(2)(c), Article IV of the Ohio Constitution. Furthermore, the appellant in Smith appealed the denial of his postconviction petition in the Butler County Court of Appeals, which addressed its merits in Statev. Smith (Aug. 31, 1998), Butler App. No. CA97-12-223, unreported. An appeal of that decision to the Supreme Court of Ohio was dismissed with no indication that the court of appeals was without jurisdiction to address the appeal. State v. Smith (1999), 84 Ohio St.3d 1469, 704 N.E.2d 578. Indeed, in a later order in Smith, the Supreme Court clearly distinguished between the direct appeal of his conviction heard by the Supreme Court and the appeal of his postconviction petition in the court of appeals. State v. Smith (1999), 85 Ohio St.3d 1413, 706 N.E.2d 1214.
In his first assignment of error, appellant asserts that the trial court erred by denying his petition for postconviction relief without a hearing. He alleges that in his petition, he stated operative facts alleging a constitutional violation, which would entitle him to a hearing. He implies that by dismissing his petition without an evidentiary hearing, the trial court treated it less than seriously. A hearing is not automatically required whenever a petition for postconviction relief is filed. The test is whether there are substantive grounds for relief that would warrant a hearing based upon the petition, the supporting affidavits, and the files and records in the case. Statev. Jackson (1980), 64 Ohio St.2d 107, 110, 413 N.E.2d 819.
Appellant alleges, as grounds for his petition, ineffective assistance of counsel for failure of his trial counsel to: challenge the sufficiency of the indictment; adequately prepare for the penalty phase of his trial; and, fully present evidence of his incompetence to stand trial. In order to prevail on a claim for ineffective assistance of counsel, appellant must show that counsel's performance fell below an objective standard of reasonableness and that prejudice arose from the defective performance. Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052. In order to prevail on a petition for postconviction relief, the petitioner must establish, based upon evidence outside the record of his case, that his conviction is void or voidable as the result of a violation of the state or federal constitution. State v. Milanovich
(1975), 42 Ohio St.2d 46, 325 N.E.2d 540, paragraph one of the syllabus. In Jackson, the Supreme Court of Ohio held that, in postconviction relief proceedings, the petitioner bears the initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel'sineffectiveness.
Appellant argues that the trial court erred by dismissing his petition without a hearing because there may exist information outside of the record to show that trial counsel's failure to object to the indictment, which omitted language accusing appellant of engaging in sexual conduct with his victim, was deficient. The trial court concluded that: the claim was raised in his direct appeal to the Supreme Court and therefore barred by res judicata; trial counsel zealously defended appellant on the very language that was omitted from the indictment; trial counsel's performance fell within acceptable standards; and, even if trial counsel's performance had fallen below that standard, appellant did not suffer any prejudice.
On direct appeal, the Supreme Court of Ohio held that counsel's failure to object to the indictment did not result in prejudice to appellant.Carter, 89 Ohio St.3d at 605-606. Thus, even if proven, trial counsel's failure to challenge the indictment at trial could not be considered constitutionally ineffective assistance of counsel.
Appellant argues that he was denied effective assistance of counsel because trial counsel did not properly prepare for the penalty phase of the trial. He asserts that the trial court could only resolve this claim through a hearing and reference to evidence outside the record. In his petition for postconviction relief, appellant points to two specific reasons for the ineffectiveness of counsel:
 "(A) failing to fully investigate petitioner's medical and social history; and
 "(B) failing to hire a mitigation expert to assist in discovery of relevant information."
The trial court ruled that appellant did not show substantive grounds for relief or a hearing in his claim that his trial counsel failed to investigate his medical and social history or hire a mitigation expert. The trial court found that appellant's trial counsel did hire a mitigation expert. On October 22, 1997, the trial court allowed funds for the hiring of mitigation experts, Sandra and Donald McPherson.
At the sentencing hearing, appellant called Nancy Dorian, a psychologist for the children's services board who dealt with appellant's placement in foster care. She testified that appellant was emotionally flat, had little warmth and nurturing as a small child, had difficulty adjusting, had an inability to get along with people and was "schizoid-prone." She testified about appellant's situation with his birth mother, who was diagnosed as a schizophrenic, who neglected him and his sister and on at least one occasion tied appellant to the leg of a couch. Appellant was placed with different families during his childhood.
Sandra McPherson testified at the penalty phase of trial and the record shows that she had conducted a thorough review of appellant's medical and social history, about which she testified to the jury. She corroborated much of Nancy Dorian's testimony and presented the jury with greater detail about appellant's background. This background included a history of mental illness in his family, developmental problems, trouble he had expressing himself, and that he never learned the boundaries of acceptable behavior. She concluded that he was unable to develop a "normal" capacity to think and feel.
It does not appear from reading the record that appellant's counsel performed inadequately at the mitigation phase of the trial. Appellant's assertion that his counsel failed to investigate his medical and social history or to hire a mitigation specialist is not supported by the record. Furthermore, appellant did not submit any evidentiary documents or point to any evidence outside of the record that would indicate that he was entitled to relief or a hearing on this claim.
Appellant asserts that his attorneys failed to develop a complete record to show that he was incompetent to stand trial because his paranoid personality did not permit him to trust, or therefore consult with and aid, his lawyers. As evidence of that claim, appellant submits an affidavit from his trial attorney to attest to the following facts: appellant would not cooperate with his attorneys; appellant would not discuss any aspects of the case or his personal life with his attorneys; appellant stood and told the jury not to waste their time with the trial because he was guilty; appellant wanted to kill his attorney; both appellant's mother and uncle were paranoid schizophrenics; and appellant would only come out of the jury room during trial if his attorneys bribed him with candy. The record also shows that appellant told the court that he did not want to be present during the trial, just wanted to plead guilty, and he attempted to attack the court.
On December 26, 1997, the trial court held a hearing to determine if appellant was competent to stand trial. At that hearing, Dr. Stanley Palumbo was called by the state. He testified that he met with appellant twice. He reviewed the police records in the case, custody records, and administered an intelligence test. The test revealed that appellant had an IQ between seventy and eighty, but Dr. Palumbo believed appellant was not trying because he had taken a previous test where he had scored ninety. Appellant would often answer "I don't know" rather than trying to answer questions correctly. He diagnosed appellant with an antisocial personality disorder, but did not believe he had a mental illness. He believed appellant was competent to stand trial because he understood the proceedings, everybody's role in the proceedings, and that he was facing the death penalty. On cross-examination, appellant's attorneys questioned Dr. Palumbo extensively about appellant's social and medical history, which included seizures, hearing loss, and possible brain damage caused by a high fever.
Appellant called Deputy Darby Vaughn who testified that appellant had attempted suicide and attacked other prisoners while in jail, awaiting trial. Appellant's counsel requested funds for an MRI test and for a second expert, which the trial court denied. The trial court ruled that appellant was competent to stand trial and indicated that it did not believe that it was even a close question.
On February 26, 1998, during jury selection, the trial court held a second hearing to determine whether appellant was competent to stand trial. At that hearing, appellant called Dr. Stephen A. King who testified that, although appellant understood the proceedings, he had some sort of paranoia that prevented him from trusting and aiding his attorneys. Dr. Palumbo testified that he met with appellant two more times and determined that he wanted to plead guilty and was angry at his attorneys for insisting he go to trial. The state called Dr. Robert W. Alcorn who testified that appellant suffered from an antisocial personality disorder and had abused drugs in the past, but felt that he was "malingering" and not really mentally ill. The trial court again ruled that appellant was competent to stand trial.
Appellant's inability or unwillingness to aid his attorneys in the defense of his case is well-documented in the record. Neither his petition for postconviction relief nor his brief raise new grounds or point to anything outside the record to demonstrate that he is entitled to relief or a hearing. Appellant's first assignment of error is without merit.
Appellant's second assignment of error is moot. While appellant raises some important points regarding the trial court's decision to address the postconviction petition while the direct appeal was still pending, the trial court's reliance on the doctrine of res judicata does not affect the outcome of this case. As we have determined in the first assignment of error, the trial court did not err by dismissing appellant's petition without a hearing because he had not raised substantive grounds that would entitle him to a hearing.
For the foregoing we reasons, we affirm the judgment of the trial court.
 _____________________ ROBERT A. NADER, J.
FORD, P.J., concurs with concurring opinion,
CHRISTLEY, J., concurs.
[1] The facts underlying this conviction were set forth by the Supreme Court of Ohio at State v. Carter (2000), 89 Ohio St.3d 593,734 N.E.2d 345.